The opinion of the court was delivered by
TiughmaN, C. J,
This is an action against the defendant, on a bill of lading, by winch he engaged to carry certain crates of earthen ware, the property of the plaintiffs, from the port of Liverpool in England, to the port of Philadelphia. A loss was sustained on the passage, by the breaking of a considerable quantity of this ware, for which it is conceded the defendant is liable. The point in dispute is, the measure of damages; that is to say, whether the plaintiffs’ loss is to be estimated according to the value of the goods, at the port of shipment, Liverpool, or the port of destination, Philadelphia. It does not appear, that this point has ever been expressly decided in Pennsylvania, though it has in other places. We have had the advantage of a very good argument, and I will consider it as it stands, 1st. Upon authority; and, 2dly. Upon principle.
1. This question has been brought up, several times, beforfi the Supreme Court of New York, and it appears to have been long perfectly settled, that the value is to be taken at the port of destination. The first case in which this matter was touched, was Smith, &c. v. Sichardson, &c, 3 Caines, 219, (A. D. 1805.) That was an action against the defendant, for refusing to carry the plaintiff’s staves, which he had engaged to do. The plaintiff’, being disappointed by the defendant, endeavoured to carry them himself, and lost part on the passage. Arbitrators, to whom the cause was referred, gave the plaintiff the value of the staves at the port of destination, The award was set aside by the court, for several reasons; one of which was, that the value should have been estimated at the port of embarkation. It is to be remarked, however, that there were other good reasons for setting aside this award:— the staves remained in the hands of the plaintiff, and were not lost in the course of carriage by the defendant; nor was it certain that the loss did not happen from the plaintiff’s own imprudence, in attempting the voyage at an improper season, and from negligence or want of skill in conducting it. It was a voyage from a port in New York, down the St. Lawrence, to some port in Canada. Next came the case of Watkinson v. Laughton, 8 Johns. 213, (A. D. 1811.) That was an action on a bill of lading, for the car *187 riage of goods from Liverpool to New York, part of which were embezzled by the crew. It was decided, that the damages were to be estimated according to the value of the goods in New York. Smith v. Richardson was cited, but said, by the court, not to be applicable, because, there, the goods were not carried or lost by the defendant. Then we have the case of Elliott, &c. v. Rossell, &c. 10 Johns. 1, (A. D. 1813.) That was an action for not carrying the plaintiff’s goods safely, from the Genesee river, to Montreal. The main point was, whether the loss arose from the act of Gon? The measure of damages was r.ot disputed, that point being considered as settled, viz. the value at the port of destination. In Bracket v. M‘Nair, 14 Johns. 170, the action was for the defendant’s neglecting to carry the plaintiff’s goods (salt,) from Oswego to Queenstown, which he had agreed to do. The rule of damages was held to be, the difference in the value of salt, at Oswego and Queenstown, deducting the freight. So that the authority of Smith v. Richardson, so far as it bears on this point, appears to have been directly overruled. The last New York case, is Emory v. M‘Gregor, 15 Johns. 24, (A. D. 1818,) where the measure of damages was decided to be, the nett value of the goods at the port of destination. The court said, “ that was the rule adopted in Watkinson v. Laughton.” In New York, therefore, the point is at rest. But the defendant’s counsel cited and laid some stress on the case of Bridge v. Austin, in the Supreme Court of Massachusetts, 4 Mass. Rep. 115, (A. D. 1808.) That case is very different from the present. It was an action against the defendant for receiving the plaintiff’s goods, as his bailiff, and taking on himself to carry them safely from Boston to Charleston, in South Carolina, on board the ship Rodney, (Burd, master.) The defendant engaged to dispose of them, at Charleston, on account of the plaintiff, and pay him the proceeds, and expressly took on himself all risks, except those of tho sea, and was to have a commission of five per cent. And it is an important circumstance, that the goods (a box of linens,) were declared, in the defendant’s written receipt and engagement, to amount to the sterling cost of eighty-four pounds, six shillings, and one farthing. The linens arrived safe, and were delivered by the captain to the defendant at Charleston, where they were stolen, without his fault, before he had an opportunity of selling them. He was held to be liable for the loss, according to the value at Boston, deducting five per cent. commission. In this case the defendant was supercargo, and his engagement seems to have been in the nature of an insurance in a valued policy; so that the general question now before us did not fairly arise. There was another case cited, Edmondson v. Baxter, 4 Hayw. 112, (Kentucky.) The rule there taken, was the value at the place of embarkation. The learned judges, who relied on the authority of the New York and Massachusetts decisions, were not, I presume, furnished with all the New York re *188 ports, or they might have been led to a different conclusion. 1 know of no other American case. In' France, and I suppose on the continent of Europe generally, where the civil law prevails, the law is held as it is in New York. Pothier, in his chapter on charter parties, page 37, is express. “ The carrier,” says he, “is liable, for the value of goods of the same quality at the place of their destination.” For this he cites the Digest, lib. 46, tit. 8: — ■ Law rat. rem. hab. “ If a stipulation be entered into by the principal, that he will ratify the thing to be done, he is liable as far as I suffer damage; that is, for so much as is deficient of the thing, and so much as I could have made of it, by way of pro fit.” The learned counsel for the defendant, who argued the cause with great ingenuity, has been able to show no English authority contrary to the rule of the civil law. But, from what was said by Lord Mansfield, in Forward v. Pittard, 1 T. Pep. 31, and by Lord Kenyon, in Garside v. The Trent and Mersey Navigation Company, 4 T. Rep. 582, it has been attempted to draw an inference that the liability of a carrier ought to be as in case of insurance, viz. for the value of the goods, according to the prime cost and charges. There are events, says Lord Mansfield, in which the carrier is liable independent of his contract. By the nature of his contract, he is liable for all due care and diligence, and for any negligence he is sueable on his contract. But there is something more by the custom of the realm, that is, by the common law, a carrier is in the nature of an insurer. It may be doubted whether the assertion be strictly accurate, that for accidents where the carrier was not guilty of negligence, he is not liable on his contract, but only by the custom of the realm. In Lawes on Charter Parties, 359, it is said, that in the old forms of declaration against a carrier, it is alleged quod suscepit, and if so, the action certainly arises ex contractu. And I take it, that it does so arise, and the plaintiff may aver, that the defendant was guilty of negligence, which the law presumes, and will not suffer it to be contradicted, unless the defendant show that the loss arose from the act of God, or the public enemy. Lord Kenyon thus expresses himself; “ The case of a carrier stands by itself, on peculiar grounds: he is held responsible as an insurer; and the reason given in the books (whether well or ill founded is immaterial here,) is, to prevent fraud. But neither Lord Mansfield nor Lord Kenyon say, that the rule of damages, in case of loss, shall be, as in cases of insurance, which without doubt, is according to the prime cost and charges. Now, then, so far as authority goes, the measure of damages inclines strongly towards the value of the goods at the place of destination. And if we consider it on principle, the damage of the plaintiff is the loss which he-has suffered by the non delivery of his goods at the place of destination, and that loss is the nett price which the goods would have brought at that place. In insurance, the law is so well known, that the merchant who wishes *189 to cover himself to the amount of his goods at the port of destination, may do so, by valuing them in the policy accordingly, or by a special insurance on profits. But this is never done in contracts for carriage — an argument of some weight, that it has been supposed the plaintiff may recover according to the value at the port of destination. Then, if we consider the policy which should regulate these contracts, it is best to remove from the carrier all temptation to fraud, which will be best done by making himself answerable for the value at the place of delivery. If the goods should be of increased value at the place of delivery, as they generally are, and the liability extends no further than the value at the place-of ship* ment, there is very great temptation to fraud; and it will be extremely difficult for the plaintiff to prove, whether the loss happened by fraud, negligence, or unavoidable accident. Indeed, I think Mr. Binney very properly observed, that he could see no reason for a different measure of damages in cases of fraud, and inevitable accident. And it would require very strong authority to satisfy me, that where the carrier fraudulently disposed of the goods at the place of delivery, and made great profit thereby, he, or his principal, should be responsible for no more than the value at the place where he had received them. It may be said, that in such case, the carrier himself, if the fraud could be proved, would be liable in an action of trover, for damages, to the full amount of what he made by his fraud. But that involves the plaintiff in the difficulty of proving the fraud, and besides, the carrier himself is often worth nothing, and his principal, the only person looked to, would not be answerable in trover. Upon the whole, then, my opinion is, that the measure of damages should be regulated according to the rule, to which authority, general convenience, and good policy incline, that is to say, to the nett value of the goods, at the place of destination.
Judgment affirmed.