Slosson, J.
1. There is no question on the authorities but that the common carrier who has received goods for transportation "and has actually performed the journey or voyage, is, in case of non-delivery of the goods, unless the failure to deliver is excused by the act of God, or perils of the sea, liable, as a general rule, for the value or price which they would have brought at the port or place of destination, if they had been delivered according to the contract.
The defendants’ counsel, however, insists that it would be unreasonable to adopt the valuation at the place of destination, when the goods have never left the place at which they were received by the carrier, but have been destroyed at such place by some cause other than the carrier’s own negligence, and insists that in such a case the value of the goods, at the place where they were received by the carrier, is the true rule both in principle and on authority.
The case of Wheelwright v. Beers, (2 Hall’s Sup. Ct. R., 391,) is relied on. The defendant had undertaken to transport the plaintiff’s goods from New York to Omoa, the vessel was forced by stress of weather into Norfolk, where she was found so much damaged that she was sold and the voyage broken up. A part of the plaintiff’s goods was also sold, and the residue shipped *630 back to him at Hew York and there sold. The loss on these sales was $1,000. On the trial the plaintiff proved what the goods would probably have brought at Omoa, and contended that he was entitled to recover according to such foreign valuation. Chief Justice Jones who tried the cause reserved the question of damages for the consideration of the Court, and the jury, under the direction of the Judge, assessed both values, that is, first, the difference between the invoice prices of the articles shipped and the net amount of the sales of the same articles after they were delivered to the plaintiff; and, second, the difference between the net amount of said sales and the prices which the articles would have brought at Omoa. The first they found to be $1,000 and they estimated the loss of the market at Omoa to be $1,500, and gave a verdict for the plaintiff for $2,500. When the case came before the Court in Bench, Judge Oakley gave an opinion in favor of the valuation at the place of destination. The Court, however, did not agree with him, and the Reporter adds: “ That part of the foregoing opinion which relates to the rule of damages was the opinion of Judge Oakley merely, and not that of the Court. The Court gave judgment in favor of the plaintiff for $1,000, being the difference between the actual sales and the invoice price of the goods, the loss of the market at Omoa being deducted from the verdict of the jury. The loss on the sale of the goods at Horfolk and Hew York was considered as the true rule as to damages, upon the ground that there was •no fault or fraud on the part of the defendant from which the loss arose, and that the case showed only a breach of the implied warranty of sea-worthiness.”
This case is important, not only as showing that>the valuation at the port of departure may be a proper measure of damage, even where the vessel has undertaken and partly prosecuted the voyage, but as also showing that in cases of this nature, where the action essentially sounds in damages, the good conduct or fault of the carrier may enter into the consideration of whether the valuation should be fixed according to the home market, or the market at the port of destination.
The case of Smith & Delamater v. Richardson, (3 Caines, 219,) is also relied on. It was brought to recover damages for the breach of the defendant’s contract, he having undertaken to con *631 vey the plaintiffs’ goods, consisting of staves, from a point in the State of New York to a place near Montreal, in Canada, and wholly failed to perform his agreement, by reason of which the plaintiff had been obliged to effect the transportation himself, in the course of which the goods were lost on the St. Lawrence. The Referees, to whom the case had been sent, gave the plaintiff the full value of the property which it would have brought in the Montreal or Quebec market; and on a motion to set aside their report, it was contended that at the utmost the defendant could only be made liable for the value of the staves “ on the spot where they lay and so the Court held, putting their decision on the ground, however, that the price in the Montreal or Quebec market was “ too uncertain and unreasonable to be admitted as a rule of damages.”
In Watkinson v. Laughton, (8 Johns. R., 213,) where goods had been embezzled during the voyage, and in which the valuation at the place of delivery was held to be the rule, the case of Smith & Delamater v. Richardson was relied upon as conclusive on the rule of damages; but the Court held that case not to be applicable, “ as that was not a case of loss arising from the fraud, negligence or misfortune of the carrier in the performance of his trust, for the defendant there never entered on the undertaking, and the suit was for a breach of contract in not carrying, and the plaintiffs afterwards became their own carriers and lost the goods,” and they held that there might be a material difference between the two cases as to the reason and policy of the rule of damages, the case before them being one of embezzlement of part of the goods in the course of the voyage.
The case of Dusar v. Murgatroyd, (1 Wash. C. C. R., 13,) resembles the one now before us most nearly in its circumstances. After the goods had been put on board for a foreign port, and before the vessel left the wharf, she nearly filled with water, in consequence of which the plaintiff’s goods were damaged to about one-half their value; 'and the Judge charged the jury that the rule of damages was the difference between the prime cost and charges, and the sales at the place of shipment.
In the case of Bridge v. Austin, (4 Mass. R., 115,) the defendant had received the plaintiff’s, goods on board his vessel at Boston, to transport to Charleston, under a special agreement to sell on *632 his account and to account for the proceeds. The goods arrived at Charleston, and were there stored by the defendant, but before they were sold were stolen. The rule of damages adopted by Chief Justice-Parsons, was the value of the goods at Boston when shipped, less the five per cent commissions stipulated for in the special agreement.
I should be unwilling to make the negligence or good conduct of the carrier the sole test by which to determine the measure by which to assess the plaintiff’s damages in a case of this kind. Apart from the difficulty of proving negligence or fraud on the part of the carrier, the burden of doing which would, by such a rule, be thrown on the plaintiff—an objection pointedly alluded to. by the Court, in Watkinson v. Laughton—it would be introducing as decisive, in- the computation of damages, a consideration which, if properly admissible at all, which I do not deny, is nevertheless not necessarily connected with the principal, if not the only object of damages in such a case, to wit, pecuniary indemnification to the plaintiff for his loss..
The case of Delamater & Smith v. Richardson does not adopt such a test, though the.Court in Watkinson v. Laughton, refer to the absence of fraud, negligence or misfortune, in that case, as one of the distinctions between it and the case then before them.
The true test, I apprehend, is what will furnish the plaintiff a full indemnity. If the value of the articles, according to the invoice price, will fully compensate for the loss, that price should govern. -If the value in the place where the goods were to be delivered is necessary to furnish a complete remuneration, that should be adopted; and hence the question whether the goods are lost in the place where they are received by the carrier, or in the place at which they were by the contract to be delivered, may become one of the last importance. I say may become, because I do not.think that that is necessarily decisive in all cases; for I can well imagine a case in which the goods are lost in the port of departure, in which, from an impossibility of procuring other articles of the same kind, or from other causes, the value at the port of .destination would furnish the only adequate indemnity to the plaintiff. In such a case it ought, except under special circumstances, to be adopted. But if the goods could b.e immediately replaced at the same -price, and sent forward by *633 another vessel, it would he unreasonable to give the plaintiff the profits he might have made if the goods had not perished and the first shipment had been successful.
This furnishes a safe and a righteous rule, and divests the question of damages of the penal character which it would have if the good conduct of the carrier were the sole test. This is the reason why, when the vessel has arrived at the port of destination, the value of the missing goods at that place is adopted. No other rule could compensate. So, if the vessel should perform but a portion of her voyage, and the goods are sold or lost by act of the carrier at an intermediate port, as in the case of Wheelwright v. Beers, in 2 Hall’s Reports, the value at the port of destination might well be given if the plaintiff was unable to replace the goods at the intermediate port and forward them on; as, on the other hand, the invoice price which was adopted in that case would be proper, if, under the peculiar circumstances of the case, that would furnish a complete indemnity.
It follows that whether the carrier has been guilty of negligence or fraud, is not the only test, nor whether the voyage has been begun or not; but whether the market price at home, or the price at the port of destination, furnishes the true and perfect indemnity, and this may depend on a variety of circumstances.
The cases which are cited to prove that the valuation at the place of delivery is in all cases of non-delivery to be adopted, do not, in my judgment, establish that position, but they do establish that, when that value is necessary to a complete indemnity, it shall be adopted. (Watkinson v. Laughton, 8 J. R., 213; Amory v. McGregor, 15 id., 24; Bracket v. McNair, 14 id., 170; Brandt v. Bowlby, 2 Barn. & Ad., 932 ; Gillingham v. Dempsey, 12 Serg. & Rawle, 188.)
In all these cases, except that of Bracket v. McNair, the vessel had arrived at the port of destination. In that case there was an entire failure to perform the contract at all. The case is not very fully reported. The defendant agreed, on the 19th of August, 1809, to transport 400 barrels of salt for the plaintiff, from Oswego Falls to Queenston, in Canada. On the 30th August news arrived at Oswego of the non-intercourse act of the United States. In the interim the vessel had sailed without the salt, and the difference between the value of the goods at Queenston on. *634 1st September and their value at Oswego, was allowed as the damages. It is quite clear, though the case does not assign that as the reason, that, by reason of the defendant’s vessel having sailed without the salt, the plaintiff, from the intervention of the non-intercourse act, had lost his opportunity of getting it to Queenston at all, and hence the difference between the two values was the only measure which would give him full indemnity.
In the case now before us the vessel was accidentally destroyed by fire, while lying at the wharf, the day after the plaintiffs’ goods were put on board, and before the day on which she was to have sailed. The question then is, how the plaintiffs can be perfectly indemnified for this loss. Unless, in the absence of all proof on the subject, we are to assume that the plaintiff could not, in the port of New York, or by sending to Connecticut where these goods were purchased, have procured other goods on that day, or within a reasonable time afterwards, of the same quality and at the same price, and further assume that no other means of transporting the goods to Liverpool could have been procured in this port within a reasonable time of the day on which the Henry Clay would, bnt for her destruction, have sailed, neither of which presumptions can, I think, be reasonably entertained, we must hold that, so far as the valuation of the goods is concerned, the value in this port, at the market price, was the true measure of damage as giving a full indemnity.
This is laying out of view, as affecting the question in the present case, the conceded fact that the defendants were without fault in respect to the calamity by which the ship and goods were destroyed. I think the case clear, without taking that into consideration, but I do not intend when I say that the conduct of the carrier, his innocence or his fault, should not be the sole test in determining this question, to be understood as saying that .these considerations are never to be taken into the account by the jury in deciding whether the value of the goods shall be determined by the home or by the foreign market. On the contrary, as the liability of the carrier arises, in part at least, from a duty imposed on him by law, it might under some circumstances be wholly inequitable to impose on him, in addition to the actual value of the property at the time of the loss, the loss of the adventure itself, even if that were necessary to a complete indemnity.
*635 And I am. not prepared to say that in a case like the present, in which, without any imputation of negligence on the part of the defendants, their vessel was accidentally destroyed by fire within a few hours after the goods were received on board, we should not consider it inequitable and unjust to impose on them a higher rate of damage than the invoice price or home valuation of the goods, if that were not sufficient to give a perfect indemnity. But we are relieved from all doubt on the latter point by the consideration that the goods were lost in the port of New York, between which and Liverpool communication is almost daily, and by the fact that there is nothing in the evidence to raise a doubt that the goods might have been immediately replaced at the same price at which they had been purchased.
Second. Ought interest to be allowed? The plaintiffs contend that it ought to be allowed as matter of law, or that at least the question should have been submitted to the jury.
The defendants contend that there being no negligence on the part of the carrier, interest ought not as a matter of law to be allowed; in other words, that the jury was properly instructed, that the plaintiffs were not entitled to interest.
In the case of Smith & Delamater v. Richardson, (3 Caines R., 221,) the Court held that interest ought not to have been allowed, but give no reason for disallowing it. There was a clear breach of duty on the part of the defendant, but the case presented this novel feature, that the plaintiffs on the defendant’s default, had taken the goods and undertaken to transport them themselves; and the Court in its opinion says it is questionable whether the entire loss of the property was not attributable to the imprudence and default of the plaintiffs. The Court in withholding interest may have been governed by this peculiar circumstance of the case.
In Watkinson v. Laughton, (8 J. R., 213,) the Court held that the question of interest depended on circumstances; that the jury might give it by way of damages in cases in which the conduct of the carrier was improper, and as no bad conduct was to be imputed to him in that case, they gave the valuation at the port of destination without interest.
The goods had been embezzled in the course of the voyage without any fraud on the part of the defendant. The plaintiff *636 claimed the value of the missing goods at the place of destination with interest. The defendant contended that,he was liable only for the invoice price without interest. A verdict was taken for the plaintiff for the valuation at the port of delivery with interest, but subject to the opinion of the Court, which by agreement of parties was to fix the. amount of „the verdict according to valuations agreed upon, and with or. without interest as it might deem right.
The Court disallowed the interest on the express ground that no bad conduct was imputable to the defendant.
In Amory v. McGregor, (15 J. R., 24,) the Court .held that the question was one for the jury, to be decided according to their views of the defendant’s conduct. “If there was any fraud or gross misconduct attending the transaction, (say the Court,) interest ought- to be allowed,” and they refused to allow it in that case, because the defendants were not chargeable with any such misconduct.
In Richmond v. Bronson, (5 Denio, 55,) the Judge at the trial had instructed the jury that the plaintiff was entitled to interest as a matter of law. The Court said that the case was precisely like Watkinson v. Laughton, and held that such instruction was erroneous; that in actions against carriers, interest was never allowable as matter of law; but it was for the jury to say whether it should be allowed, in order that they may do justice according to the circumstances, giving as a reason for this that “ the loss of the goods may have been matter of accident, without any willfullness or intentional misconduct on the part of the carrier.”
I think it-would be hardly logical to infer from this case that where it was conceded that there was no fault on the part of the .carrier, the jury might still give interest; on the contrary, when the Court in this and the two former cases say it is a question for the jury, they mean undoubtedly that when the whole case goes to the jury on disputed facts, and the question of negligente is one for them to pass upon, the giving or withholding interest should be wholly left to their discretion, according as they might find the case to be, either one of neglect, on the part of the carrier, .or the contrary, giving interest, where the carrier is in the wrong, and withholding it where he is wholly innocent. I can *637 not draw any other deduction from these cases. Though in- the two cases in Johnson, the verdict was taken subject to the opinion of the Court, and the Court, sitting as a jury, refused the interest, it was still a judicial determination of the test by which to determine the propriety of allowing it, and the misconduct of the carrier was in both cases adopted as that test.
In most cases, interest when allowed is given, in part at least, upon some idea of an equivalent already received by the defendant, in the use of the money or property withholden. Hence it is allowable, even in trover, but as against a carrier, in whose hands goods have been lost, or, as in the present case, wholly destroyed without any fault whatever on his part, no such principle can be invoked. It is impossible that he should have received any advantage whatever from the possession of the goods.
But it is said interest should be allowed at least from the commencement of the suit, because as the defendants were always liable for the value of the goods, they have had the use of the money, which, as such value, represented the goods since that time.
That is very true, and if the plaintiffs had demanded by their action no more than the Court now adjudges them to be entitled to, and the defendants had refused to pay it, it might perhaps be some reason for now allowing interest; but the plaintiffs have always claimed the valuation in Liverpool, and this the defendants have always contested, and have now succeeded in establishing a different valuation. Why, then, should they now be compelled to pay interest ?
Upon the whole, we think the charge of the Judge was correct on both propositions.
A new trial should be denied, and judgment must be for the plaintiffs for the amount of the verdict.
Hoffman, J.
The question whether interest was chargeable, appeared to me at first to be plainly against the defendants. The responsibility of the defendants to the. plaintiffs was fixed by the law, as the Court of Appeals has decided. The value of the goods shipped was capable of prompt and accurate liquidation upon the home price, and of very little difficulty upon the basis of the value at the place of destination. The defendants thought proper to raise again an important question of commercial law, *638 of great personal interest to themselves. They have kept the plaintiffs out of their money until that question was ruled against them. The decision was, that they were responsible, and ought ' to have paid at once. The plaintiffs will not obtain their full indemnity if they are deprived of interest from the time they should have received the amount, and the defendants have had an advantage in the retention of money which they should then have paid over.
The case of Dana v. Fiedler, (2 Kern., 40,) appeared to me to involve a principle which would authorize the charge of interest in the present case, and to make this charge a matter of legal right, not a case for submitting it to the discretion of a jury, to allow it or not,' according to circumstances, and their judgment upon them. The cases in which the action is simply ex delicto, of which Walrath v. Redfield, (18 N. Y. R., 457,) is an example, seemed plainly distinguishable. (See also The Gold Hunter, 1 How. & Blatchf., 300 ; McGregor v. Kilgore, 6 Ohio R., 143; 6 Ham., 358, 361.)
But the case of Watkinson v. Laughton, (8 Johns. R., 213,) holds that where the carrier is free from fault, he cannot be charged with interest on the value of goods lost or destroyed while in his custody. The interest which the jury had added to the value of the goods was disallowed by the Court, and the amount of the verdict reduced. The rule thus stated has received some confirmation or recognition in Amory v. McGregor, (15 John. R., 24-38,) and in Richmond v. Bronson. (5 Denio, 55-57.)
I feel bound to yield to these authorities, and not at liberty to disregard them upon the mere strength of my conviction, that the principles which later cases contain, and which may be deduced by reasoning from later decisions, tend to show that the rule ought not to exist, and probably will be overruled by the Court of Appeals in carrying out its own doctrines in Dana v Fielder, (2 Kern., 40.)
I must consider, therefore, the ruling of the Judge in this particular to be correct.
2. The next important question is, whether the damages shall be estimated according to the value of the goods at the port of destination, Liverpool, or at the port of shipment, Hew York. The difference is $3,368.91 of principal. The goods were shipped *639 on the 3d and 4th of September, 1849, in Yew York, and the fire occurred on the 5th of that month. The ship was to have sailed on the 6th.
The leading case in our Courts, that of Watkinson v. Laughton, (8 J. R., 213,) is one where the vessel had arrived at the port of destination, and part of the goods had been embezzled without the fault of the captain. The net value at that port was the standard adopted.
In Amory v. McGregor, (15 John. R., 24,) the vessel was on her voyage when the capture took place, from which the loss of the goods arose. The case of Watkinson v. Laughton was recognized as governing the question before the Court.
In Bracket v. McNair, (14 John R., 170,) the defendant had neglected, without good reason, to transport the salt as he had contracted to do. The difference of the value at the place to which it was to be carried, and the value at its place of intended shipment, was allowed.
Delamater v. Richardson, (3 Caines’ R., 219,) is not of much bearing upon the question, as the case turned much upon the fact that the staves were taken by the plaintiffs, and transported at a dangerous season of the year.
In the case of Arthur v. The Cassius, (2 Story’s R., 81,) the goods had arrived at the port of destination; the consignee refused to receive them; the master was held bound to have landed them there. His conduct was suspicious: there was misconduct on his part.
In Wheelwright v. Beers, (2 Hall’s R., 391,) the goods were shipped at Yew York for Omoa, and the vessel was driven into Yorfolk. Portions of the goods were sold there, and other portions brought back to Yéw York and sold. The rule of damages adopted by the Court (Jones, Ch. J., and Hoffman, J.,) was the difference between the amount of the total sales and the invoice price at Yew York. Mr. Justice Oakley alone advocated the rule of the difference between the prime cost and the net value at the port of destination. The jury had found a verdict of $2,500, estimating the loss of the market at Omoa at $1,500. The recovery was but for $1,000. The invoice was $3,744. The sales must have been $2,744, as the difference was $1,000.
This case seems to me to involve the proposition that if all the goods had been brought back to Yew York and sold there, the *640 difference between the proceeds and the prime cost would have been the rate of damages. If so, the case is strong to show that, when all the goods have been lost in the port of New York before starting, the prime cost is the true rule.
The case of The Tribune, (3 Sumn. R., 144,) appears to be in favor of taking the port of lading as furnishing the standard of value, but is by no means decisive.
In The Gold Hunter, (1 Howl. & Blatch., 300,) portions of the goods, shipped at Havre for New York, were plundered or consumed on the passage, and part sold to raise money for repairs at Halifax, a port of distress. It was held that the market value at New York of the goods lost was to be recovered, with interest. Watkinson v. Laughton was referred to. The vessel arrived at New York.
The case of The Joshua Barker, (1 Abb. Adm. R., 215,) was of a peculiar character. The cargo of flour was put on board a vessel at Albany, to be carried to New York. The vessel capsized at the wharf. The cargo was taken out damaged, and immediately sold by the carriers without waiting for orders from New York, which could have been received in a few minutes by telegraph, and in forty-eight hours by regular mail. The vessel itself was pumped out, and arrived at New York in a week after the accident. The value of the goods at the latter place, on the day of arrival, was adopted as the measure of damages, deducting' freight and charges and adding interest. The interest was allowed as the appropriate recompense for the fault or misconduct of the party.
In Dusar v. Murgatroyd, (1 Wash. C. C. R., 13,) goods shipped to be transported to Hamburgh were damaged in the port of shipment. The Judge charged: “ The profit which might have been obtained if the sugars had gone safely to Hamburgh was claimed at the opening, but was properly abandoned by the concluding counsel. The difference between the prime cost and Charges and the sales here, forms a fair measure of the damage sustained.”
Warden v. Green, (6 Watts’ R., 424,) was the case of part of the goods being landed at the port of delivery. Some were damaged and some missing. The value there was the rule adopted.
*641 In O'Conner v. Forster, (10 Watts’ R., 418.) there was a contract to convey wheat from Pittsburgh to Philadelphia, a proffer of the wheat by the shippers to" the ship owners, and their refusal to receive and carry it. The damages were fixed at the difference between the market value of the goods at Philadelphia, at the time when they would have arrived, and their value at the place of intended shipment, with the freight.
Gillingham v. Dempsey, (12 Serg. & Rawle, 183,) is a leading authority. The subject was fully and ably examined. It is clear that the vessel had arrived at Philadelphia from Liverpool. The injury was sustained on the passage, and from improper stowage of the crates of earthenware. The value at Philadelphia was explicitly recognized.
Bridge v. Austin, (4 Mass., 115,) is carefully reviewed in the last cited case; and it does not afford much support to the proposition of the defendants in the case before us.
McGregor v. Kilgore, (6 Ohio R., 358,) was a plain case of neglect or misconduct of the carriers in not having efficient means of unloading and reshipping at the intermediate port. The right of doing so was given them in case of low water.
There are some other authorities which bear, though less directly, upon the present question.
It is entirely settled that when the goods, delivered to a carrier for transportation, are taken to the place of destination, but delivered in a damaged condition, or when some of the goods shipped are not delivered at all, but the vessel has arrived out, the value at the port of destination is the rule of estimating the damages. Brandt v. Bowlby, (2 Barn. & Adol., 932,) is a striking example of this rule.
So, if the vessel is driven by distress into an intermediate port, and part of the goods are there sold for the necessities of the ship, and she then arrives at her port of destination, the goods so sold are to be allowed for according to the price at the port of delivery, or the shipper has the right to elect to take the net proceeds of the sale. (Alers v. Tobin, cited Abb. on Ship., 372; Hallett v. Wigram, 9 Com. Bench R., 580.)
But in Atkinson v. Stephens, (7 Exch. R., 567,) it was decided that when a portion of the goods had thus been sold at a port of distress, and the vessel had then proceeded, but never arrived at *642 her port of destination, the owners were not responsible for the value of the goods at the latter port. The question arose upon pleadings, and the judgment was restricted to that identical point. It was stated to be an uncertain question, whether the ship owner was liable at all if the vessel never arrived at the port of destination. Leave to amend the declaration was given, with a view to have this point considered.
The Commercial Code of France (art. 298) provides for these cases. Freight is due for goods which the master has been obliged to sell to furnish repairs, &c., he being accountable for the value of the goods thus sold, at the price of the rest, or of similar goods of the same quality at the place of discharge, if the vessel arrive safe. If the vessel be lost, the master shall account for the goods at the rate at which he sold them, retaining the freight according to the bill of lading.
Justice Story, in Pope v. Nickerson, (3 Story C. C. R., 465,) followed the rule of the Code, and held that a subsequent loss of the ship did not discharge the liability.
Mr. Abbott, (p. 372 and note n.,) has referred to the foreign authorities upon the point whether, in the case of a sale of some goods at an intermediate port, and then a loss of the ship and of the remaining goods, the goods sold were to be paid for at all. M. Boulay Paty has examined the subject with his usual care. (Droit Commercial, tome 2, p. 219.) The Judgments of Oleron, the Ordonnances of Wisbuy, and the Assurances of Anvers, are quoted with the opinions of Emerigon, of Valin and Pothier. T.he two latter authors were of opinion that the owners were responsible for the goods. He then states that the Commission (appointed by Napoleon to prepare the Code) adopted the contrary view of Emerigon, but the Council came to a different resultand he cites the reasoning of M. Begouen before the Corps Legislatif, which induced the adoption of the article as it appears in the Commercial Code.
. The learned author concludes thus l “ There cannot, then, at this day, be any further controversy. Whether the vessel arrive in safety, or is lost after the sale of the goods, the price of those goods sold for the necessities of the vessel must equally be paid, deducting the freight. Yet there is this difference: If the vessel arrive at her destination,, the goods are to be paid for at the price *643 which the residue or others of the same quality are sold for at the place of discharge; but if the vessel is lost, the liability is only for the amount for which the goods were sold.”
The argument upon which the exemption of the ship owner from any liability was based, was mainly this, that had the goods remained on board the shipper would have lost them. Of course a loss by such a peril as is excepted in the bill of lading, is contemplated.
The rule which has thus been adopted, after long and critical examination and discussion, by the second commercial power of Europe—the rule which the Courts of England have to this extent sanctioned—that goods sold at the intermediate port shall not be allowed for at their value at the port of discharge, when the vessel perishes, sheds no faint light upon the point we are now considering. We find (under the French rule at least), that while a responsibility is fixed upon the ship-owner for goods thus -appropriated, although had they remained on board no liability would have been incurred, the value of the goods when and where lost to the owner, supplies the rule of damages.. We find, also, a marked exception to the asserted universality of the rule, that the standard of compensation is the value at the place of destination.
There are other instances in which the value of goods, at the time of the injury or loss, or the prime cost, is taken as the measure of damages. Such is the rule in all marine torts. (The Amiable Nancy, 3 Wheat., 560, and cases.) Justice Story says: “ This rule may not secure a complete indemnity for all possible injuries, but it has certainty and general applicability to recommend it.” A similar rule prevails in cases of insurance. In Smith v. Condry, (1 How. U. S. R., 28,) the Chief Justice says: “ It has been repeatedly decided in cases of insurance, that the assured cannot recover for the loss of probable profits at the port of destination, and that the value of the goods at the place of shipment is the measure of compensation. There can be no good reason for establishing a different rule in cases of collision.”
So, in general average, goods contribute according to their value at the place where they are considered saved. (2 Phil., 151; 5 Duer R., 429.
*644 These analogies are not indeed decisive. They are capable of being distinguished from the present case on various grounds; but at least they show how many exceptions exist to the rule assumed, and to open the inquiry whether, even in the case of common carriers, others may not be found consistent with justice and policy, and not repugnant to express authority or acknowledged principle.
Upon reviewing the decisions which have been cited, I do not find one in which the value at the port of destination has been taken, unless where either the carrier has been actually in fault or neglectful, or where the vessel, with the goods damaged or with the residue of the goods, had arrived at her outward port. I do find the case of Wheelwright v. Beers, which seems to sanction the rule of a valuation in Kew York, under the circumstance's of the utter loss of the vessel and of the goods at that place before the ship had moved on her voyage. It is consistent with justice that the ship owners should respond for no more than the sum which would enable the shipper to replace goods of the same quality in the same condition on board another vessel. When the case is admitted or proven, of the entire exemption of the owners from any neglect or culpability, there does not seem to be any absolute mandate of policy which should increase their own loss or subject them to harder dealing than such a rule would prescribe. It may be observed that there is evidence of the defendants having a line of vessels engaged in running between Kew York and Liverpool.- The witness had shipped goods by that line in the months preceding the shipment in question.
I think the charge of the Court below was right in this particular.
Kew trial denied, and judgment ordered for the plaintiffs for ■the amount of the verdict, with costs of suit.